# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| FLOYD STEVESON MOODY, | CASE NO. 09-CV-0892-LAB (BGS) |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION TO GRANT DEFENDANT RICHARD BUTCHER'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| PAULETTE FINANDER, Chief Medical Officer, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Floyd Moody, a California state prisoner currently incarcerated at Pleasant Valley State Prison ("PVSP"), proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. §1983. On June 4, 2009, Plaintiff filed a First Amended Complaint against Paulette Finander, K. Ball, Richard Butcher, and Manorama Reddy[1], alleging that he received inadequate medical care in violation of the Eighth Amendment[2]. (Doc. No. 4.)

Currently pending before the Court is a motion for summary judgment filed by

---

[1] Erroneously sued as Manoram Reddy

[2] Plaintiff also asserted a conspiracy claim in his First Amended Complaint, which was dismissed without leave to amend by the Court in an Order dated April 1, 2011. (Doc. No. 38 at 12-13, n.2.)

1  Defendant Richard Butcher, M.D pursuant to Fed.R.Civ.P. 56. ("Dr. Butcher"). (Doc. No. 88.)
2  Plaintiff filed a response in opposition on January 20, 2011. (Doc. No. 104.) Defendant
3  Butcher filed a reply in support of his motion on January 28, 2011. (Doc. No. 112.) On
4  August 1, 2011, the Court issued an order pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th
5  Cir.1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir.1988) warning Plaintiff
6  that Defendant's motion for summary judgment seeks to have the case dismissed and allowing
7  Plaintiff an opportunity to supplement his opposition in light of the notice. (Doc. No. 139.)
8  Plaintiff did not file a supplemental opposition by the due date of August 19, 2011.

9  Also pending before the Court is Plaintiff's motion to continue pursuant to Fed.R.Civ.P.
10 56(f)[3], filed on January 27, 2011, *nunc pro tunc* to January 3, 2011. (Doc. No. 111.)
11 Defendant Butcher filed a response in opposition to the motion to continue on February 1,
12 2011. (Doc. No. 114.)  As an initial matter, the Court denies Plaintiff's motion to continue.
13 Plaintiff was given an opportunity to supplement his opposition following his request to
14 continue with any supplemental documents. (Doc. No. 139.)  Plaintiff failed to do so.
15 Additionally, Plaintiff's request to continue focuses on a document that supports his allegations
16 of a conspiracy between defendants.  These allegations were dismissed without leave to
17 amend.  Therefore, Plaintiff has been able to present facts essential to justify his opposition and
18 a continuance of this matter is not appropriate.

19 This matter has been referred to the undersigned Magistrate Judge for a Report and
20 Recommendation (R&R). For the reasons set forth below, the Court **RECOMMENDS** that
21 Defendant Butcher's motion for summary judgment be **GRANTED**.

## II. FACTUAL BACKGROUND

23 On July 3, 2008, Plaintiff received an abdominal ultrasound at Lancaster Imaging.[4]

---

[3] Plaintiff cites Fed.R.Civ.P. 56(f) as the basis for his request for a continuance. However, effective December 1, 2010, Fed.R.Civ.P. 56(d) is the provision of the Federal Rules of Civil Procedure that concerns requests to continue motions for summary judgment when facts are unavailable to the nonmovant.

[4] Defendant states that Plaintiff was admitted to Lancaster Community Hospital ("LCH") on July 3, 2008 with complaints of abdominal pain. Plaintiff disputes this. Defendant has not provided evidence that Plaintiff was admitted to LCH on July 3, 2008. The record provided for July 3, 2008

1  (Doc. No. 88-9, Ex. F.) The ultrasound report indicated elevated liver enzymes and showing a 4 cm ill-defined lesion in his central right liver lobe. The ultrasound report noted the lesion could be a benign or malignant tumor or fatty infiltration. The report recommended a CT or MRI for further evaluation. (Doc. No. 88-9, Ex. F.)

On August 4, 2008, Plaintiff received a follow-up CT scan of his abdomen. (*Id.*, Ex. G.) The CT report noted Plaintiff's clinical history of Hepatitis-C and elevated alpha-fetoprotein levels. (*Id.*, Ex. G.) The report stated, "[t]here is an ill-defined and irregular hypoechoic mass in the anterior liver slightly to the right side of the epigastric region, approximately 4 cm in size, which corresponds to the abnormality seen on ultrasound." (*Id.*, Ex. G.) The report also noted other slightly irregular areas of liver density without any measurable or definable geographic boundaries, and indicated that these findings may be representative of underlying heterogeneity of the liver parenchyma due to the patient's Hepatitis C status and chronic disease. (*Id.*, Ex. G.) Based on the confirmation of the presence of an abnormal mass within the liver, a biopsy was recommended to confirm or exclude the presence of hepatocellular carcinoma. (*Id.*, Ex. G.)

On September 19, 2008, Plaintiff was taken to LCH for additional tests to confirm or exclude the presence of hepatocellular carcinoma in his liver. (*Id.*, Ex. H.) Dr. Viken Manjikian performed the additional tests. At 10:09 a.m., Plaintiff received an upper abdominal sonogram, which detected the presence of a "poorly marginated 4X5 cm sized mass possibly representing a hemangioma on the left side of the liver." (*Id.*, Ex. H at 1.) At 1:19 p.m. on the same day, Plaintiff received an abdominal CT scan, which detected a lesion in the left side of the liver that was less likely to be malignant by its early characteristics, as well as a smaller lesion in the right side of the liver that was "highly suspicions for malignancy." (*Id.*, Ex. I.) The CT scan report noted that the lesion in the right lobe was not described in any other prior CT or ultrasound report. (*Id.*, Ex. I at 2.) A biopsy was recommended for both the right and left liver lesions. (*Id.*, Ex. I at 2.)

---

by both Plaintiff and Defendant is an ultrasound report from Lancaster Imaging. (Doc. No. 88-9, Ex. F; Doc. No. 104-9, Ex. F.) The Court, however, finds that whether Plaintiff was admitted to the hospital and then received an ultrasound is immaterial.

- 3 -                                                                      09cv892-LAB

1    At 1:30 p.m., Plaintiff received the recommended biopsy of the left liver mass to determine whether the mass was hepatocellular carcinoma. (*Id.*, Ex. J.) The diagnosis report from the left liver mass stated, "[n]eedle biopsy of left liver mass shows, moderate fatty infiltration, extensive portal triaditis, with bridging fibrosis and early cirrhosis suggestive of marked steatohepatitis, possibly superimposed on Hepatitis-C infection." (*Id.*, Ex. K.)

At 2:27 p.m., Plaintiff underwent a right liver biopsy. (*Id.*, Ex. L.) The report of the procedure stated that after five attempts of appropriate access site targeting, the procedure was discontinued because accessing the lesion with accuracy was not possible with the patient's current sedation status. (*Id.*, Ex. L.) Dr. Manjikian recommended arranging anesthesia for the patient in order to proceed with the biopsy under controlled conditions and noted that "the biopsy of this slight liver lesion is very urgent as this is the likely malignancy and likely hepatoma or hepatocellular carcinoma by its features and imaging characteristics." (*Id.*, Ex. L.) A second biopsy of Plaintiff's right liver was never completed at LCH.

On January 8, 2009, Plaintiff was sent from Calipatria State Prison as a direct admit to Alvarado Hospital for complaints of chest pain. (Doc. No. 88-10, Ex. M.) Dr. Butcher admitted Plaintiff to Alvarado and noted in his pre-op history and physical report Plaintiff's complaints of chest pain, as well as Plaintiff's report of cirrhosis of the liver and a diagnosis of liver cancer. (*Id.*) Dr. Butcher evaluated Plaintiff and determined a treatment plan for Plaintiff. (*Id.*) The plan was to admit Plaintiff to the floor, have Dr. Zamudio, cardiologist, evaluate Plaintiff and have GI evaluate the status of cirrhosis and liver cancer. (*Id.*)

Plaintiff received a 2-D echocardigram that was reported by Dr. Zamudio. The echocardigram showed mild concentric left ventricular hypertrophy and no valvular abnormalities present. (*Id.*, Ex. N.) After receiving Dr. Zamudio's report, Dr. Butcher noted that Plaintiff's cardiac status is unremarkable with a normal echo and normal enzymes. (*Id.*, Ex. N.)

Dr. Tuan Nguyen saw Plaintiff for evaluation of the status of cirrhosis and liver cancer. (*Id.*, Ex. N—P.) Plaintiff received a dynamic 3-phase CT scan without and with contrast of his abdomen and pelvis on January 11, 2009. (*Id.*, Ex. O.) The CT scan report stated under

1  "impression," "1. Geographic hypoattenuating focus within the left lobe of the liver consistent
2  with focal fatty infiltration. No hypervasular liver mass or other evidence of hepatocellular
3  carcinoma. 2. Enlarged liver with peripheral nodularity suggests underlying cirrhosis. 3.
4  Otherwise unremarkable abdominal and pelvic CT without and with contrast." (*Id.*, Ex. O.)

5  Following these evaluations, Dr. Butcher prepared a transfer summary. Dr. Butcher's
6  discharge diagnoses included chest pain, atypical; malignant hypertension; cirrhosis of the
7  liver, no evidence of liver cancer; depression; and alcohol abuse. (*Id.*, Ex. N at 1.) His transfer
8  summary stated that "[n]o hypervascular liver mass or other evidence of hepatocellular
9  carcinoma noted. It was felt that the patient does have cirrhosis, but no hepatocellular
10 carcinoma." (*Id.*, Ex. N.) The transfer summary noted Plaintiff's lab results indicated elevated
11 alpha fetoprotein levels. (*Id.*, Ex. N at 2.) Dr. Butcher found Plaintiff okay to be discharged
12 back to the facility and recommended that Plaintiff lie in for the next two weeks and have no
13 work detail. (*Id.*, Ex. N.) Dr. Butcher noted that Plaintiff should follow up in the medical
14 clinic in one week's time and that he was okay for general population. (*Id.*, Ex. N.) Dr.
15 Butcher also noted that:

> [H]e had several long and extensive conversations with the patient who believes that he has hepatocellular carcinoma stating that he has seen the records and that this is what it states. The patient would not be convinced despite having a negative CT guided biopsy that did not show this and now a repeat triple phase CT scan does not show any evidence of hepatocellular carcinoma.The patient is at risk for developing this with a history of cirrhosis. His enzymes are elevated. The patient continues to think that there is something positive. Will just have him follow up there with GI. Would also have him at least have a repeat of his liver enzymes and alpha fetoprotein in a 3 month period.

21 (*Id.*, Ex. N at 3.)

22  Plaintiff was again admitted to Alvarado Hospital on January 20, 2009 following
23 complaints of right upper quadrant abdominal pain and also some daily hemoptysis when he
24 wakes up in the morning. (Doc. No. 88-11, Ex. Q at 1.) He was transferred from Pioneer
25 Hospital, where he had received an initial gastrointestinal work up because of these
26 complaints, to Alvarado for further testing. (*Id.*) Dr. Manorama Reddy admitted Plaintiff and
27 noted Plaintiff insisted that he has hepatocellular carcinoma and was worried that this
28 diagnosis was missed during his last visit to Alvarado Hospital. (*Id.* at 1-2.) Dr. Reddy

1  recommended a treatment plan of admitting Plaintiff for further workup and GI consult, a
2  repeat alpha fetoprotein, pain control, and other further GI workup as needed. (*Id.* at 4.)

3        On January 22, 2009 Plaintiff received an MRI of his abdomen without and with
4  contrast that was compared to his CT scan from January 11, 2009. (*Id.*, Ex. R at 1.) The
5  findings of the MRI led to an impression of focal fatty infiltration of the left lobe of the liver,
6  no liver mass, and otherwise unremarkable abdominal MRI with contrast. (*Id.*, Ex. R at 1.)

7        On March 15, 2009, Plaintiff was evaluated by Dr. Jeffrey Marino at Mercy Hospital
8  Bakersfield's emergency room with complaints of right upper quadrant pain. (*Id.*, Ex. S at 1.)
9  Dr. Marino, in evaluating Plaintiff, noted that, "Mr. Moody is most likely malingering
10 regarding his 'hepatomas' that he has undergone biopsy previously." (*Id.*, Ex. S at 2.) Dr.
11 Marino recommended admitting Plaintiff, having him evaluated by a gastroenterologist, and
12 providing Plaintiff with a definitive diagnosis and then either evaluating Plaintiff or sending
13 him back with the specific understanding that he does not have underlying tumors. (*Id.*, Ex.
14 S at 2.)  While at Mercy Hospital, Plaintiff received a repeat CT scan of his abdomen and
15 pelvis, which showed "mild fatty infiltration of the liver" and "no pelvic mass." (*Id.*, Ex. S at
16 2; Ex. T.)

17       On May 21, 2009, Plaintiff was again evaluated at Mercy Hospital and received a CT
18 scan of his abdomen and pelvis. (Doc. No. 104-12, Ex. VV.) The report from the CT scan
19 noted that a lesion within liver appears larger and that a fine needle aspiration biopsy may be
20 of use for the patient. (*Id.*) On May 27, 2009, Plaintiff received a repeat triple-phase CT scan
21 of his abdomen without and with contrast and a CT guided liver biopsy. (*Id.*, Ex. V.) The CT
22 scan report noted that the findings of the scan are consistent with focal fatty regeneration in
23 segment 5 of the liver and that the focal mass effect is a large regenerating fatty area. (*Id.*, Ex.
24 V at 1.) A biopsy was performed simultaneously with the scan, which found two small benign
25 and incidental hemangiomata. (*Id.*, Ex. V at 2.) The report recommended a followup CT scan
26 in six months. (*Id.*, Ex. V at 2.)

27       On June 30, 2009, Plaintiff was again seen at Mercy Hospital and received a follow-up
28 CT scan of his abdomen without and with contrast. (*Id.*, Ex. X.) The CT scan was compared

1  to the scan from May 27. The June 30 report noted that there was no change from the May 27
2  scan. (*Id.*, Ex. X at 1.) The CT scan report noted an impression of focal fatty infiltration in
3  segment 5 of the liver, which is a benign finding. (*Id.*, Ex. X at 1.)
4       Plaintiff, in his First Amended Complaint ("FAC") alleges that Dr. Butcher "acted with
5  a deliberate indifference, and intentionally ignored, the matter of the 'right' and left liver
6  masses and was the creator of a 'new policy,' that 'no liver masses' existed at all." (Doc. No.
7  4 at 5.) Plaintiff alleges that Dr. Butcher "fabricated documentations[sic], while knowing and
8  having scientific data, and patient history, that this urgent matter was true." (*Id.*) Plaintiff
9  alleges that Dr. Butcher told Plaintiff that "he wasn't going to see anything" on any test he
10 took. (Doc. No. 4-2 at 8.) According to Plaintiff, Dr. Butcher left "that matter untreated, while
11 knowing, if left untreated, it could produce death, and that death, could've been prevented."
12 (*Id.*) In his opposition to Defendant Butcher's motion for summary judgment, Plaintiff asserts
13 that Dr. Butcher failed to treat a myriad of other issues, including his cirrhosis, multiple
14 superficial ulcerations in the stomach, peripheral nodularity with enlarged liver, elevated alpha
15 fetoprotein levels, and diverticulosis. (Doc. No. 104.) Plaintiff complains that because Dr.
16 Butcher failed to provide any treatment, his condition has gotten worse as evidenced by the
17 May 21, 2009 Mercy Hospital CT scan report that noted that a lesion had increased in size and
18 because he now has stage IV liver disease whereas Dr. Butcher reported that he was in the
19 early stages. (*Id.*)

20                            **III. LEGAL STANDARDS**

21 **A. Summary Judgment**

22      Summary judgment is appropriate when "the pleadings, the discovery and disclosure
23 materials on file, and any affidavits show that there is no genuine issue as to any material fact
24 and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material
25 fact is one which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
26 242, 248 (1986). A dispute regarding a material fact is genuine if the evidence is such that a
27 reasonable trier of fact could return a verdict in favor of the nonmoving party. *Id.*
28      A party seeking summary judgment "always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (citing *Anderson*, 477 U.S. at 257) (emphasis in the original). Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment. *Stefanchik*, 559 F.3d at 929. Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255; *see T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. *Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985).

///

## B. Eight Amendment–Inadequate Medical Care

Defendant Butcher argues that no genuine issue of material fact exists to show that he acted with deliberate indifference required to support an Eight Amendment violation. The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Eighth Amendment's cruel and unusual punishments clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle*, 429 U.S. at 105. "Medical" needs include a prisoner's "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must point to evidence in the record from which a trier of fact might reasonably conclude that Defendant's medical treatment placed Plaintiff at risk of "objectively, sufficiently serious" harm and that Defendant had a "sufficiently culpable state of mind" when he either provided or denied him medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted). Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

Although the "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 1999), the objective component is generally satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904 (quotations omitted).

However, the subjective component requires the prisoner to also allege facts which show that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Inadequate treatment due to "mere medical malpractice" or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Moreover, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough, by itself, to support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Nor does a difference of opinion between the prisoner and his doctors constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). And, while deliberate indifference can be manifested if a doctor or prison guard intentionally denies or delays access to medical care or otherwise interferes with medical treatment already prescribed, *see Estelle*, 429 U.S. at 104–05, the delay must also lead to further injury or be somehow harmful. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (noting that harm caused by delay need not necessarily be "substantial"), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

## IV. DISCUSSION

In his motion for summary judgment, Defendant Butcher does not challenge the objective basis for Plaintiff's Eighth Amendment claim, and therefore the Court will not address the objective prong. (Doc. No. 88 at 5.) Rather, Defendant Butcher argues that Plaintiff's allegations cannot satisfy the subjective or deliberate indifference requirement, as the medical records demonstrate that Defendant Butcher was not deliberately indifferent to Plaintiff's medical needs. (*Id.*)

The Court agrees with Defendant Butcher and finds that the record before the Court does not show any triable issue as to the subjective component of an Eighth Amendment inadequate medical care claim against Defendant Butcher. *See Frost*, 152 F.3d at 1128; *Farmer*, 511 U.S. at 837. In order to justify trial, Plaintiff must point to evidence in the record to show that Defendant Butcher was "deliberately indifferent" to his serious medical needs, *i.e.*, that he knew, yet consciously disregarded Plaintiff's pain or the need to provide him

constitutionally adequate care. *See McGuckin*, 974 F.2d at 1060. This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

Although Plaintiff claims that Dr. Butcher ignored the matter of the right and left liver masses and purposefully failed to respond to Plaintiff's liver concerns, Plaintiff fails to offer any factual support or evidence supporting this claim.[5] Plaintiff's allegations that Defendant Butcher fabricated documents are likewise unsupported by any evidence. Defendant Butcher has provided documentation that shows he carefully considered Plaintiff's medical condition, evaluated Plaintiff's needs, and ordered further evaluations and tests by specialists in cardiology and GI. (*See* Doc. No. 88-10, Exs. M & N.) As part of his treatment of Plaintiff, Defendant Butcher, on the recommendation of gastrointestinal specialist Dr. Nguyen, ordered a triple-phase CT scan and other tests to determine Plaintiff's liver status at the time of treatment. The CT scan did not show any masses to biopsy and showed no evidence of hepatocellular carcinoma. (*Id.*, Exs. N & O.) Defendant Butcher noted that test results indicated Plaintiff had elevated alpha fetoprotein levels and cirrhosis of the liver. Elevated alpha fetoprotein levels can be secondary to certain liver disorders, ranging from cirrhosis to Hepatitis C to hepatocellular carcinoma. (Doc. No. 88-8, Ex. D, Haggerty Decl. ¶14.) Defendant Butcher recommended continued monitoring of Plaintiff's enzymes and alpha fetoprotein levels, a follow-up exam in one week's time, and no work detail for two weeks.

Defendant Butcher has also provided declarations of two expert witnesses. Colin Haggerty, M.D., an expert in internal medicine, opines that Dr. Butcher appropriately referred

---

[5] Plaintiff submits his declaration and declarations from fellow inmates Thomas E. King, Jr. and Garrick Harrington. (Doc. Nos. 104-4, 104-5, & 104-7 Ex. AA.) Mr. King's declaration concerns his interactions with Plaintiff since October 30, 2009. (Doc. No. 104-5, King Decl. ¶4.) Mr. Harrington's declaration concerns his observations of Plaintiff from March 2009 to July 2009. (Doc. No. 104-7 Ex. AA, Harrington Decl. ¶¶5-11.) Mr. King's and Mr. Harrington's declarations do not shed any light on what Defendant Butcher's mental attitude actually was on January 8–14, 2009. Plaintiff's declaration regarding Dr. Butcher's care largely contains matters not known to him personally and conclusory allegations unsupported by factual data. These are insufficient to oppose summary judgment. *See Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (holding a declaration containing statements that are matters of opinion and not based on personal knowledge are entitled to no weight); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding summary judgment cannot be defeated by relying solely on conclusory allegations unsupported by factual data).

Plaintiff to both a cardiac specialist for his chest complaints and a GI specialist to test, rule-out or determine whether Plaintiff had hepatocellular carcinoma. (Doc. No. 88-8, Ex. D, Haggerty Decl. ¶12.) Dr. Haggerty states that the dynamic triple-phase CT with and without contrast recommended by Dr. Nguyen and ordered by Dr. Butcher is a special study that would have the resolution to demonstrate any existing liver mass. (*Id.* ¶15.) Dr. Haggerty opines that the follow-up care recommended by Dr. Butcher was appropriate and provided for a future plan of ongoing care to review and monitor Plaintiff's liver concerns. (*Id.* ¶17.) In his opinion, Dr. Haggerty believes that Dr. Butcher's care and treatment of Plaintiff was at all times within the community standard of care for internists and that Dr. Butcher's follow-up orders and tests were appropriate and went above and beyond the standard of care. (*Id.* ¶¶21-22.)

Defendant Butcher also submits the declaration of Lawrence P. Bogle III, M.D. (Doc. No. 88-8, Ex. E, Bogle Decl.) Dr. Bogle's expertise is in radiology. (*Id.* ¶1.) Dr. Bogle states that he reviewed the 3-phase CT scan conducted by Dr. Nguyen and reviewed by Dr. Butcher, and concurs with the findings of no hypervascular liver mass or other evidence of hepatocellular carcinoma and would not have provided a different interpretation. (*Id.* ¶15.) Dr. Bogle also reviewed the MRI Plaintiff received at Alvarado on January 20, 2009 and concurs with the results that revealed only focal fatty infiltration of the left lobe and no liver mass at that time. (*Id.* ¶16.) Dr. Bogle opines that Dr. Butcher's clinical assessment of the radiology reports and/or films was an accurate assessment of the results. (*Id.* ¶21.) Plaintiff has not submitted any expert opinion to establish a triable issue of fact as to whether the triple-phase CT scan showed a liver mass that should have been biopsied at the time.

Plaintiff's chief complaint in his FAC is that Defendant Butcher ignored the right and left liver masses and that because of Dr. Butcher's fabricated reports, Plaintiff has yet to receive a biopsy of the right liver mass as recommended on September 19, 2008. However, the medical records and expert opinions provided by Defendants show that at the time of treatment, there were no liver masses present. Plaintiff submits no contradictory evidence or expert opinion to support his allegations that Dr. Butcher fabricated documents and instituted a new policy that no masses existed.

Additionally, Plaintiff seems to raise for the first time in his opposition Dr. Butcher's treatment of his cirrhosis and other ailments was deliberately indifferent. It is not entirely clear from Plaintiff's opposition and materials in support what Plaintiff asserts was the failure in treatment, as the arguments often lapse into discussion of the liver masses and conspiracy theories. However, in several places, Plaintiff mentions that Dr. Butcher noted Plaintiff was in the early stages of cirrhosis and implies that his failure to treat the cirrhosis led to Plaintiff being diagnosed with stage IV liver disease only four months later. (*See, e.g.*, Doc. No. 104 at 4, 12; Doc. No. 104-4, Plaintiff Decl. ¶¶21, 38.) From a review of the medical records submitted by both parties, the Court is unable to locate any report by Dr. Butcher identifying Plaintiff's liver disease as in the early stages. The LCH left liver biopsy report dated September 22, 2008 and generated by Dr. Manjikian, however, gives a diagnosis of "early cirrhosis suggestive of marked steatohepatitis." (Doc. No. 88-9, Ex. K at 1.) This report also grades the disease at stage 3. (*Id.*) Dr. Manjikian's diagnosis of stage 3 liver disease does not give rise to a triable issue of fact as to Dr. Butcher's mental attitude in treating Plaintiff.

Dr. Butcher's report from January 2009 noted the CT scan showed an enlarged liver with some peripheral nodularity suggestive of cirrhosis, diagnosed Plaintiff with cirrhosis of the liver, and noted that Plaintiff is at risk for developing hepatocellular carcinoma with his history of cirrhosis. (Doc. No. 88-10, Ex. N at 1-3.) Defendant Butcher recommended testing Plaintiff's enzymes and alpha fetoprotein levels in three months in order to monitor the status of his liver problems. (*Id.*) In addition to his incorrect assertion concerning Dr. Butcher's cirrhosis diagnosis as "in the early stages," Plaintiff fails to offer any contradictory evidence or factual support for the expert opinions that Defendant Butcher's treatment of Plaintiff was appropriate and within the community standard of care.

The evidence submitted by Defendant Butcher shows that he acted in a deliberative manner in treating Plaintiff by evaluating his complaints, recommending a treatment plan with specialists, ordering tests to evaluate Plaintiff's concerns of liver cancer, reviewing and appropriately evaluating those tests, and recommending appropriate follow-up care. Plaintiff, apart from conclusory allegations, has not put forward any evidence from which to draw an

inference that Defendant Butcher acted with deliberate indifference to Plaintiff's concerns of liver cancer. A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data. *Taylor*, 880 F.2d at 1045. Additionally, the medical evidence provided demonstrates that since Dr. Butcher's care of Plaintiff, no diagnosis of hepatocellular carcinoma has been made. Because this evidence concerning Defendant Butcher's care and assessment is not contradicted anywhere in the record, the Court finds no genuine issues of material fact exists as to whether Defendant Butcher acted with deliberate indifference to Plaintiff's serious medical needs. Accordingly, the Court recommends granting Defendant Butcher's motion for summary judgment.

## VI. Conclusion and Recommendation

For the reasons set forth above, the undersigned Magistrate Judge recommends that Defendant Butcher's motion for summary judgment be **GRANTED**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).

**IT IS HEREBY ORDERED** that no later than **September 6, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 20, 2011**.

**IT IS SO ORDERED**.

DATED: August 22, 2011

**BERNARD G. SKOMAL**
United States Magistrate Judge