| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FLOYD MOODY, CDCR #G-26035, | | CASE NO. 09CV0892-LAB (JMA) |
| | Plaintiff, | **ORDER ADOPTING REPORTS AND RECOMMENDATIONS;** |
| vs. | | **AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| PAULETTE FINANDER, et al. | | |
| | Defendants. | **[Docket numbers 88, 103, 105, 138, 140, 141, and 142.]** |

Plaintiff, a prisoner in state custody, brought this action under 42 U.S.C. § 1983 against prison medical personnel for violation of his Eighth Amendment rights. Specifically, he argued they were deliberately indifferent to his serious medical needs. This matter was referred first to Magistrate Judge Jan Adler, and later to Magistrate Judge Bernard Skomal for report and recommendation ("R&R").

Defendant Dr. Richard Butcher filed a motion for summary judgment (Docket no. 88), as did Defendants Drs. Finander and Ball (Docket no. 105). Defendant Dr. Reddy moved to dismiss under Fed. R. Civ. P. 12(b)(5) (for improper service) and (6) (for failure to state a claim) (Docket no. 103). Judge Adler issued his three reports and recommendations (the "R&Rs") (Docket nos. 140 through 142), recommending granting both motions for summary judgment, granting Dr. Reddy's motion to quash service, and denying as moot Dr. Reddy's

motion to dismiss for failure to state a claim. The R&Rs set deadlines for objections. Plaintiff Moody has objected to the two R&Rs that recommend granting the motions for summary judgment, but has not objected to the R&R that recommends quashing service on Dr. Reddy.

On June 23, 2011, Moody also filed a motion (Docket no. 138) objecting to various tactics and actions by Defendants, especially Defendants' counsel's failure to send him a proposed pretrial order for review. More generally, the motion objects that Defendants are engaging in stalling tactics in this litigation.

While the motions were pending, Judge Skomal issued a warning pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). (Docket no. 139.) This warning cautioned Moody about the effect of a summary judgment motion, and invited him to submit additional briefing or evidence. Moody failed to do so within the time permitted and, in his objections to the R&Rs, acknowledged he was not submitting supplemental documents. (Docket no. 143, ¶ 4.)

**I.   Moody's Motion**

To the extent Moody's motion deals with matters concerning the pretrial conference, it is premature. No pretrial conference is imminent, and no proposed pretrial order is due yet. This request is therefore unripe. To the extent Moody is objecting to Defendants' tactics as inappropriate, this is mainly an argument about the merits of his claims. Because the merits are being ruled on, this request is moot.

**II.   Legal Standards**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the R&R to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). "The statute

| | |
|---|---|
| 1 | makes it clear that the district judge must review the magistrate judge's findings and |
| 2 | recommendations de novo *if objection is made*, but not otherwise." *Id*. When no objections |
| 3 | are filed, the Court need not review de novo the Report and Recommendation. *Wang v.* |
| 4 | *Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005).  Objections that would not alter the |
| 5 | outcome are moot, and can be overruled on that basis. *See, e.g., Ammons v. Walker*, 2011 |
| 6 | WL 844965, slip op. at *2 (C.D.Cal., March 3, 2011) (overruling as moot objections that, |
| 7 | even if sustained, would not alter the outcome)). |
| 8 | "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court |
| 9 | may look beyond the pleadings and decide disputed issues of fact." *Wyatt v. Terhune*, 315 |
| 10 | F.3d 1108, 1120 (9th Cir. 2003). In ruling on a motion to dismiss for failure to state a claim, |
| 11 | however, the Court accepts factual allegations as true and construes the pleadings in the |
| 12 | light most favorable to the nonmoving party. *Outdoor Media Group, Inc. v. City of Beaumont*, |
| 13 | 506 F.3d 895, 900 (9th Cir. 2007). |
| 14 | Prison conditions involving "the wanton and unnecessary infliction of pain" constitute |
| 15 | cruel and unusual punishment in violation of the Eighth Amendment. *Rhodes v. Chapman*, |
| 16 | 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the |
| 17 | level of an Eighth Amendment violation, however, unless (1) the prison official deprived the |
| 18 | prisoner of the "minimal civilized measure of life's necessities," and (2) the official "acted with |
| 19 | deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.2004) |
| 20 | (citations omitted).  "[T]he indifference to his medical needs must be substantial.  Mere |
| 21 | 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." |
| 22 | *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v.* |
| 23 | *Gamble*, 429 U.S. 97, 105–06 (1976)).  "[A] complaint that a physician has been negligent |
| 24 | in diagnosing or treating a medical condition does not state a valid claim of medical |
| 25 | mistreatment under the Eighth Amendment. Medical malpractice does not become a |
| 26 | constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see* |
| 27 | *also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). |
| 28 | / / / |

A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). To succeed on a § 1983 "deliberate indifference" claim, a plaintiff must show, among other things, that a defendant's deliberate indifference caused harm. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin* at 1060).

## III. Discussion

### A. Dr. Reddy's Motion to Dismiss

On January 4, 2011, the Court denied Moody's motion for default judgement against Dr. Reddy, finding Dr. Reddy had not been properly served. Two days later, Dr. Reddy moved to dismiss for lack of personal jurisdiction, and also for failure to state a claim. On August 26, Judge Skomal issued his R&R (Docket no. 142), recommending that service on Dr. Reddy be quashed, that Moody be given additional time in which to serve Dr. Reddy, and that Dr. Reddy's motion to dismiss for failure to state a claim be denied as moot. Neither party has objected to this R&R, which the Court therefore **ADOPTS**.

### B. Motions for Summary Judgment by Drs. Butcher, Ball, and Finander

Dr. Butcher filed a motion to dismiss, and Drs. Ball and Finander jointly filed another motion to dismiss. Judge Skomal's R&Rs (Docket nos. 140 and 141) recommend granting these motions.

Moody suffers from numerous significant health problems, including serious liver problems. The R&Rs set forth the details of the lengthy treatment of Moody's liver problems. Without repeating all of the details, the salient points are that Moody suffers from hepatitis C and cirrhosis of the liver, and a variety of painful symptoms. He also had a lesion on the right lobe of his liver. Initially, it was unclear whether this was benign, a malignant tumor, or fatty infiltration. After a good deal of evaluation, testing, and consultation it became clear the

1  lesion was not cancerous. It is undisputed that Moody does not have liver cancer, and never
2  did. Moody even takes pains to distance himself from any suggestion that he ever said he
3  had liver cancer. (*See, e.g.*, Obj. to R&R (Docket no. 143), ¶ 6 ("Not once on 'any document'
4  has or can the Defend[a]nts show Plaintiff has at any time 'thought' or said 'I have cancer.'
5  Those are statements of Defendants.")) Moody does repeatedly dangle the possibility of
6  cancer before the Court, but only for the purpose of arguing that the doctors had no basis
7  for delaying cancer screening; he never says he had it, only that it was possible he had it and
8  that testing for it was "very urgent." (Obj. to R&R (Docket no. 144), at 8.)

9  Moody's essential medical claim is that, when some doctors suspected he had, or
10 might have, liver cancer, he should have been properly biopsied and screened for cancer,
11 but wasn't. He also argues that the doctors should have treated his other liver problems
12 (hepatitis C and cirrhosis). He also emphasizes the pain he was in, and the terrible
13 symptoms of his liver problems.

14 In his opposition to Dr. Butcher's motion for summary judgment, Moody also identified
15 gastro-intestinal problems he says Dr. Butcher failed to treat. He says this caused the liver
16 lesion to get worse. But there is no evidence to support this. He also accuses Dr. Butcher
17 of forging documents and falsely denying the existence of liver masses. He faults Dr.
18 Finander for failing to intervene to stop his transfer to another institution, but admitted he had
19 not filed a grievance about this.

20 Moody's objections to these two R&R's (Docket nos. 143 and 144) overlap a good
21 deal. A good deal of his objections deal with legal standards about which there is no
22 dispute, with Moody's belief about what the Court's rulings on earlier motions have been,
23 with bare assertions that the doctors were deliberately indifferent, and with generalized
24 complaints that the R&R overlooks or misquotes the record. He also repeatedly emphasizes
25 that his case is strong, that any jury would find in his favor, and that summary judgment
26 ought not to be granted. Moody also raises numerous factual objections that make no
27 difference to the outcome of his dispute, such as the date of his incarceration, (*see* Docket
28 no. 144 at 6), and that his cirrhosis was not caused by alcohol use. (*See id.* at 9, 12.) To

the extent any of those objections are relevant, they are not "specific" as required under *Reyna-Tapia*, 328 F.3d at 1121. *See also Palmisano v. Yates*, 2007 WL 2505565, slip op. at *2 (S.D.Cal., Aug. 31, 2007) (citing authority holding that generalized objections to a magistrate judge's R&R do not invoke de novo review of the entire R&R). September 20, 2011

Moody's actual objections are contained mostly in his first set of Objections (Docket no. 143, objecting to Docket no. 140, the R&R on Dr. Butcher's motion), at pages 3–4, 6, 8–9, and 10; and in his second set of Objections (Docket no. 144, objecting to Docket no. 141, the R&R on Drs. Ball and Finander's motion), at pages 2 (¶¶ 4, 6), 3 (¶¶ 7, 9, 10), and 4–14. The last section is primarily an overview of the evidence from Moody's point of view, and his expressed dissatisfaction with the medical treatment.

Both R&Rs contain factual findings based on the record. While he believes the R&Rs reached the wrong conclusion and objects to their reasoning, he does not generally disagree with their recital of facts. The Court therefore adopts the unobjected-to factual findings; the few potentially material facts he does object to are discussed below.

Moody has objected to the R&R's acceptance of medical records as evidence. He argues these records are inherently unreliable, because Defendants can say "anything they want" in their reports. For this principle, he cites *Bracey v. Herringa*, 466 F.2d 702 (7th Cir. 1972). *Bracey*, however, deals with reports where a party had motives to misrepresent the facts. *See Wheeler v. Sims*, 951 F.2d 796, 802 (7th Cir. 1992) (distinguishing *Bracey* because the records at issue there contained self-serving statements, whereas the ones at issue in *Wheeler* were ordinary records made in the ordinary course of prison business). Medical records made by doctors and other medical personnel either at the prison or at outside medical institutions during the course of treatment cannot be said to fall within the reasoning of *Bracey*. These records are admissible under Fed. R. Evid. 803(6). *See United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005).

/ / /

/ / /

### 1. Deliberate Indifference

Moody's objections repeatedly assert deliberate indifference and mention a medical report on September 19, 2008. That report concerned a CT scan, and recommended a biopsy of both the right and left sides of his liver, the former being mentioned as likely malignant and therefore urgent. (Docket no. 141 at 3:16–26.) The left side was successfully biopsied, but the right could not be. (*Id*. at 4:6–16.) The follow-up report urgently recommended the right liver biopsy be again attempted, *id*. at 4:9–13, but in spite of the recommendation, this never took place.

Defendants have presented evidence they did not intentionally ignore the urgent recommendation. Dr. Finander, the chief medical officer at Lancaster State Prison, where Moody was initially held, submitted evidence she mistakenly believed the follow-up biopsy had been ordered, and that failure to order it was an oversight. (*See* Docket no. 141 at 16:7–22.) Moody, for his part, believed she did not read the reports carefully enough and failed to notice that the right liver biopsy had not been completed. (*Id*. at 16:15–19.)

In early December, 2008, Moody was transferred to Calipatria State Prison. Dr. Ball, the chief medical officer at Calipatria, presented evidence that he responded to Moody's concerns promptly by directing another doctor to review records concerning the biopsy, and by transferring Moody to Alvarado Hospital for testing to rule out cancer. (*Id*. at 23:18–24:3.) Dr. Butcher first encountered Moody at Alvarado Hospital in January, 2009, after which he consulted with a gastrointestinal specialist, ordered a triple-phase CT scan, and discovered no evidence of cancer. (Docket no. 140 at 11:6–14, 11:19–12:22.) This uncontroverted evidence shows a liver cancer screening has taken place, and that liver cancer has been ruled out. After that, no biopsy of the right side of the liver was performed. (*Id*. at 12:22–27.) Dr. Butcher's conclusion that Moody did not have liver cancer was confirmed by a second doctor. (*Id*. at 12:11–22.)

Moody has presented no evidence to support his allegations that Dr. Butcher forged documents, deliberately ignored test results or intentionally misinterpreted tests. Nor has he pointed to any evidence that any of the three intentionally ignored evidence he might

have liver cancer, or intentionally delayed cancer screening. In particular, it is clear Drs. Ball and Butcher acted quickly and appropriately to rule out cancer. As for Dr. Finander, both sides agree anything she did wrong was a mistake, not deliberate.

### 2. Objection: May 21, 2009 CT-scan Report Showed Delay Caused Harm

Moody attempts to overcome the R&R's finding that no harm resulted from a delay in screening him for liver cancer by citing to a May 21, 2009 CT-scan report from Mercy Hospital, which he says shows that the delay <u>was</u> harmful. (Docket no. 143, ¶ 2; *see also id.* at 10 (alleging harm).) This report by Arthur Fontaine, with Moody's own annotations, is Docket no. 119-16, Ex. K at 8. This report notes his general condition, including a lesion on his liver, with the remarks that the lesion "appears larger" and also "[t]his is not a benign hemangioma." Moody appears to be seizing on these observations as a way of showing harm. (*See* Docket no. 144 at 10–11 (alleging harm because the mass was "larger" and "not benign")). But the report doesn't show that failure to screen for liver cancer earlier caused the lesion to get larger, or delayed appropriate treatment. And the observation that it was "not a benign hemangioma" does not indicate it was malignant. Furthermore, the report doesn't say cancer screening would have alleviated Moody's suffering, or that it should have been performed earlier, or even that it was necessary as of May, 2009. Instead, its sole recommendation is "Fine needle aspiration biopsy may be of use for this patient." Nothing in this document suggests a delay in testing Moody for liver cancer caused him any harm.

Moody's theory, essentially, is that his symptoms, which appear to be severe, were somehow caused by a failure to test him for liver cancer. (*See, e.g.*, Docket no. 144 at 10 ("The delay was harmful . . . since it is accompanied with daily severe, chronic pain and swelling seen with the eye, such pain the Plaintiff cannot some days ambulate . . . .")) But there is no evidence any delay in testing Moody for liver cancer caused his other symptoms. Even assuming, *arguendo*, that the doctors were deliberately withholding liver cancer screening, there is no evidence of any harm this caused. Moody doesn't have liver cancer, and never did. This is not a case where a doctor acting out of deliberate indifference didn't

treat a prisoner's cancer, or where a doctor acting out of deliberate indifference treated a prisoner for cancer the prisoner didn't have. Instead, it's a case of accidentally delaying screening a prisoner for a malady it turns out he didn't have anyway.

### 3. Objection: Delay in Screening for Liver Cancer Caused Emotional Harm

Moody also attempted to pursue an emotional harm theory, *i.e.*, that by delaying his liver cancer screening, Defendants left him fearfully wondering whether he had cancer, and caused emotional injury. But as the R&R points out, the Prison Litigation Reform Act prevents recovery for emotional injury in the absence of physical injury. *See* 42 U.S.C. § 1997e(e). Because Moody can't show any physical injury as a result of the delay, he can't recover for any emotional harm.

### 4. Objection: Failure to Treat Other Liver Maladies

Moody does have other problems (which are apparently the source of his symptoms), but Defendants were treating those to extent they could. Defendants presented evidence there is no treatment that will reverse cirrhosis of the liver; instead, sufferers must avoid further harming the liver  Moody has no evidence of his own, and admitted he doesn't know how cirrhosis is treated. (Docket no. 141, 22:2–15.)

Defendants offered evidence hepatitis C can be treated with Interferon and Ribivarin, that treatment takes approximately 48 weeks, and that it has approximately a 25% to 35% cure rate. (*Id*. at 22:19–22.) The drugs used to treat hepatitis C are known to have troublesome side effects, including acute depression and a danger of suicide. (*Id*. at 20:25–28.) Defendants also offered evidence that Moody's other health problems, including hypertension, cardiac problems, diabetes, and blood in the stool need to be addressed before treatment could begin. (*Id*. at 21:1–2, 7–16.) A psychiatrist who is not a Defendant in this case attempted an evaluation of Moody to clear him for treatment of hepatitis C, but found him uncooperative and recommended that the interview be rescheduled in one month. (*Id*. at 21:4–7.) Before the month was over, however, Moody had been transferred. Following the transfer, another doctor who is not a Defendant in this case found his other

medical problems absolutely contraindicated treatment. (*Id.* at 21:9–16.) Moody has submitted no evidence contradicting any of this. His assertions and allegations, standing alone, do not constitute evidence. Because the motions under consideration are for summary judgment, Moody "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" to resist the motion. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Moreover, the record is replete with evidence showing Defendants were going to great lengths to attempt to diagnose and treat Moody's liver problems. Even if he could show they were negligent, he cannot show they were deliberately indifferent. The fact that Moody disagrees with the treatment does not create a triable issue of fact. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (difference of opinion between prisoner and his doctors does not constitute deliberate indifference).

In short, Moody's pain and other liver symptoms appear to be caused by diseases Defendants were attempting to treat. They were not caused by liver cancer. Therefore, even assuming Defendants were deliberately indifferent by failing to screen Moody for liver cancer earlier, that deliberate indifference didn't cause any harm.

### 5. Court's Earlier Ruling

Moody cites to an earlier ruling the Court made in this case. In Docket no. 143 at 8, he cites the Court's order of April 20, 2010 (Docket no. 38) denying in part and granting in part Defendants' motions to dismiss:

> Here, Plaintiff claims Defendants Finander, Ball and Butcher all knew about, but deliberately ignored a 10-page report issued after Plaintiff's September 19, 2008 biopsy which "urgently" recommended his right liver mass be tested because it was "most likely hepatoma or hepatocellular carcinoma." Assuming this true, the Court finds both that Plaintiff has sufficiently alleged a violation of the Eighth Amendment and that it would be clear to any reasonable medical official in Defendant Finander and Ball's position that to deny Plaintiff a right-liver mass biopsy under the circumstances would violate clearly established law.

(*Id.* at 15:7–15) (citations omitted).

Moody argues that because the R&R departed from this standard, it was in error. The cited ruling, however, occurred within the qualified immunity analysis, and dealt with whether

officials in Drs. Finander, Ball, and Butcher's positions could reasonably believe they were acting within the law, if they avoided screening Moody for liver cancer under those circumstances.

In other words, this is not a complete statement of the standard for recovering on an Eighth Amendment "deliberate indifference" claim. Among other things, it is missing the necessary element of causation. The earlier ruling should not be understood as purporting to overrule *Jett*, 439 F.3d 1091, 1096 (9th Cir. 2006), which requires a showing that the deliberate indifference caused harm.

### 6. Claim Arising From Transfer

Moody does not object to the R&R's finding that he never exhausted his administrative remedies concerning Dr. Finander's failure to intervene to prevent his transfer. (Docket no. 141 at 18:21–19:15). While he repeatedly points out he is still suffering, he has not objected that the transfer caused his suffering or made it worse, or that he received worse health care as a result of the transfer. He also does not point to any evidence he suffered any harm because of the transfer. As the R&R explains, even if he could show harm, this claim would be barred because of Moody's failure to exhaust.

## IV. Conclusion and Order

For the reasons set forth above, Moody's motion concerning pretrial matters (Docket no. 138) is **DENIED**. Moody's objections to the R&Rs (Docket nos. 140 and 142) recommending that the motions by Drs. Finander, Ball, and Butcher for summary judgment (Docket nos. 88 and 105) be granted are **OVERRULED**, and the two motions are **GRANTED**. All claims against Drs. Finander, Ball, and Butcher are **DISMISSED WITH PREJUDICE**.

Dr. Reddy's motion to dismiss conspiracy claims pursuant to Fed. R. Civ. P. 12(b)(6) is **DENIED AS MOOT**. Dr. Reddy's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) is **DENIED**, but service on Dr. Reddy is **QUASHED**. Moody is **GRANTED** an extension of time under Fed. R. Civ. P. 4(m) to effectuate service on Dr. Reddy.

/ / /

1  The U.S. Marshal shall re-attempt service of the First Amended Complaint and
2 summons upon Defendant Reddy within 30 days of the date this order is issued.

4  **IT IS SO ORDERED**.
5 DATED: September 23, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge